UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MARGARET M. MCGRAW, | Case No. 14-CV-0142 (PJS/HB) |
| Plaintiff, | |
| v. | ORDER |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION; CITIMORTGAGE, INC.; CITIBANK, N.A.; and CHIMNEY PINES HOMEOWNERS ASSOCIATION, INC., | |
| Defendants. | |

Jonathan L.R. Drewes and Caitlin Guilford, DREWES LAW, PLLC, for plaintiff.

Jared M. Goerlitz, PETERSON, FRAM & BERGMAN, PA, for defendants.

Plaintiff Margaret McGraw brings this action to invalidate the foreclosure sale of her home. This matter is before the Court on cross motions for summary judgment. Because defendant Citimortgage, Inc. ("Citi") failed to strictly comply with the statutory requirements for foreclosure by advertisement, the Court grants (for the most part) McGraw's motion for summary judgment, denies (for the most part) defendants' motion for summary judgment, and declares the foreclosure sale of McGraw's home to be null and void.

## I. BACKGROUND

McGraw borrowed money to buy a home and executed a mortgage on that property. The mortgage was assigned to Citi on January 3, 2011. After McGraw fell behind on her loan payments, Citi initiated foreclosure proceedings.

Citi opted to foreclose by advertisement. Minnesota's foreclosure-by-advertisement statutes require the mortgagee (or "bank") to provide various notices, two of which are relevant here. First, the bank must issue a "notice of foreclosure sale" that provides information about the foreclosure sale, including "the time and place of sale." Minn. Stat. § 580.04(a)(5). Second, the bank must issue a "foreclosure advice notice" that provides information to help the mortgagor (or "homeowner") in the foreclosure process. *See* Minn. Stat. § 580.041. The statute provides that the notice "must be in 14-point boldface type" and "[t]he title of the notice must be in 20-point boldface type." *Id.* at subd. 1b. The statute also provides that the notice

> must appear substantially as follows:
>
> . . . AS OF [insert date], this lender says that you owe $[insert dollar amount] to bring your mortgage up to date (or 'reinstate' your mortgage). You must pay this amount, plus interest and other costs, to keep your house from going through a sheriff's sale.

*Id.* at subd. 2.

Although these requirements are clear and simple, Citi failed to comply with them when it foreclosed on McGraw's home. First, the notice of foreclosure sale issued by Citi stated that the place of sale was the "Sheriff's Office, Room 30, Hennepin County Courthouse, 350 So. 5th St., City of Minneapolis." The room number and street address were correct, but the building at that address is not the "Hennepin County Courthouse." Instead, it is Minneapolis City Hall. (The Hennepin County Courthouse is located across the street, at 300 South Sixth Street.) Second, the foreclosure-advice notice was not in 14-point boldface type and the title of the notice was not in 20-point boldface type. Finally, the foreclosure-advice notice listed a reinstatement amount as of January 9, 2012. But the notice was not served on McGraw until December 12, 2012—nearly a year later—and thus the notice did not identify the amount that McGraw had to pay to reinstate her mortgage as of the time that she received the notice.

The sheriff's sale went forward on February 22, 2013, and the property was sold to Citi. McGraw claims that the foreclosure sale was invalid because Citi did not strictly comply with the foreclosure-by-advertisement statutes.[1] Citi disagrees. The parties have filed cross motions for summary judgment.

---

[1]McGraw originally brought two additional claims alleging that (1) Citi failed to provide the correct Certificate of Title number (Count I) and (2) Citi failed to serve McGraw with various notices (Count V). McGraw has abandoned these claims, and thus Citi's motion for summary judgment on these claims is granted.

## II. ANALYSIS

### A. *Standard of Review*

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the lawsuit under the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

### B. *Strict-Compliance Standard*

The parties' summary-judgment motions require this Court to interpret and apply Minnesota's foreclosure-by-advertisement statutes. "When applying Minnesota law under our diversity jurisdiction, we are bound by the decisions of the Minnesota Supreme Court." *Badrawi v. Wells Fargo Home Mortg., Inc.*, 718 F.3d 756, 758 (8th Cir. 2013). "If the state supreme court has not ruled on a particular issue, we must determine what rule it would apply by looking to other statements made by the court and rulings by inferior state appellate courts." *Id.* (internal quotation marks and alterations omitted).

Foreclosure by advertisement was created by statute as an alternative to foreclosure by judicial proceedings. *See Ruiz v. 1st Fid. Loan Servicing, LLC*, 829 N.W.2d 53, 56 (Minn. 2013). The foreclosure-by-advertisement statutes allow a foreclosing party to "tak[e] the remedy in his own hands, by an ex parte proceeding," *Spencer v. Annon*, 4 Minn. 542, 544 (Minn. 1860), and foreclose on property without any involvement by a judicial officer (thus avoiding "delay and expense"), *Jackson v. Mortgage Electronic Registration Systems, Inc.*, 770 N.W.2d 487, 494 (Minn. 2009) (quoting *Soufal v. Griffith*, 198 N.W. 807, 809 (Minn. 1924)). In return for being given such broad power, the foreclosing party is required to meet a number of detailed statutory requirements. *See Jackson*, 770 N.W.2d at 495 (citing *Moore v. Carlson*, 128 N.W. 578, 579 (Minn. 1910)); *Spencer*, 4 Minn. at 544. Moreover, "[b]ecause foreclosure by advertisement is a purely statutory creation, the statutes are strictly construed." *Jackson*, 770 N.W.2d at 494 (citing *Moore*, 128 N.W. at 579).

The Minnesota Supreme Court is not kidding when it says that the foreclosure-by-advertisement statutes must be strictly construed. The Minnesota Supreme Court "require[s] a foreclosing party to 'show exact compliance' with the terms of the statutes." *Id.* (quoting *Moore*, 128 N.W. at 579). "If the foreclosing party fails to strictly comply with the statutory requirements, the foreclosure proceeding is void." *Id.* The Minnesota Supreme Court has invalidated foreclosure sales even when the statutory

violations seem trivial.  *See, e.g., Clifford v. Tomlinson*, 64 N.W. 381, 382 (Minn. 1895) ("To hold that a difference of two days in the date renders the foreclosure invalid may seem somewhat technical, but we have no discretion to exercise, as the requirements of the statute are absolute.").  And the Minnesota Supreme Court has invalidated foreclosure sales even when the statutory violations did not prejudice the homeowner.  *See, e.g., Peaslee v. Ridgway*, 84 N.W. 1024, 1025 (Minn. 1901) ("The question whether such defects are of a prejudicial character is not considered important.  The court has adopted the rule that the statutes must be strictly pursued, and a clear departure from the terms and requirements of the statutes vitiates the proceedings.").

A recent decision of the Minnesota Supreme Court—*Ruiz v. 1st Fidelity Loan Servicing, LLC*, 829 N.W.2d 53 (Minn. 2013)—illustrates the court's approach in recent years to violations of the foreclosure-by-advertisement statutes.  The provision at issue in *Ruiz* (Minn. Stat. § 580.02(3)) required that any assignment of a mortgage be recorded *before* the initiation of foreclosure-by-advertisement proceedings.  The bank recorded an assignment on the *same day* that it initiated foreclosure proceedings.  The district court held that the bank had substantially complied with § 580.02(3), and thus refused to invalidate the foreclosure sale.  829 N.W.2d at 55.  On appeal, however, the Minnesota Supreme Court rejected the argument of the bank "that a foreclosing party need only substantially comply with the statutory requirements for foreclosure by advertisement,

and a foreclosure is voidable only when a complaining party establishes that she is the intended beneficiary of the protection afforded by the statutory requirements at issue and that the foreclosing party's non-compliance with such requirements is prejudicial." *Id*. at 56-57. The Minnesota Supreme Court held that "in light of the statutory language that recording all assignments of the mortgage is 'requisite' to make such foreclosure 'by advertisement,' the statute unambiguously mandates strict compliance." *Id.* at 58. It simply did not matter to the court that the violation was trivial and did not prejudice the homeowner; strict compliance means strict compliance.

Citi argues that, notwithstanding the broad language of *Ruiz*, the strict-compliance standard does not apply to the particular statutory provisions that it violated.[2] Instead, says Citi, this Court should apply a substantial-compliance standard. Under this standard, Citi's violations of the statute would render the foreclosure sale voidable, rather than void. The sale would not be void unless (1) the homeowner was the intended beneficiary of the statute and (2) the homeowner suffered prejudice as a result of the violation of the statute.

---

[2]Citi does not defend on the basis of Minn. Stat. § 580.041, subd. 4, which requires that a homeowner commence an action to invalidate the foreclosure sale and file a notice of lis pendens before a foreclosure sale can be invalidated under the statute. Citi confirmed at the hearing that, because the property is Torrens property, a notice of lis pendens would not be filed.

This Court does not believe that the Minnesota Supreme Court would apply a substantial-compliance standard to the violations committed by Citi in this case (with one qualification, discussed below). First, the bank in *Ruiz* made the same argument that Citi makes in this case, and cited in support of its argument the same judicial decisions (*Willard v. Finnegan*, 44 N.W. 985 (Minn. 1890), and *Holmes v. Crummett*, 13 N.W. 924 (Minn. 1882)) that Citi cites in support of its argument. The Minnesota Supreme Court rejected the argument and did not even bother to distinguish *Willard* or *Holmes*. The court's analysis began and ended with the plain language of the statute, which provides that "it is requisite" that any assignment of a mortgage be recorded before the initiation of foreclosure-by-advertisement proceedings. § 580.02(3). When a foreclosure-by-advertisement statute uses such mandatory language, the court said, "the statute unambiguously mandates strict compliance." 829 N.W.2d at 58.

Here, too, the statutory provisions at issue use mandatory language. Section 580.04(a)(5) provides that "[e]ach notice [of foreclosure sale] *shall* specify or contain . . . the time and place of sale." (Emphasis added.) And § 580.041, subd. 1b provides that "[t]he foreclosure advice notice . . . *must* be in 14-point boldface type and . . . [t]he title of the notice *must* be in 20-point boldface type." (Emphasis added.) "Shall" and "must" are no less mandatory than "it is requisite."

-8-

Only § 580.041, subd. 2 opens the door to application of something like a substantial-compliance standard. That provision uses mandatory language—it says that "[t]he foreclosure advice notice required by this section *must* appear . . ."—but what it mandates is that the notice ". . . must appear *substantially* as follows." (Emphasis added.) Thus, a foreclosing party must strictly comply with the letter of § 580.041, subd. 2, but the letter of § 580.041, subd. 2 requires only that the foreclosure-advice notice "substantially" reflect the prescribed form.

Second, Citi argues that *Badrawi v. Wells Fargo Home Mortgage, Inc.*, 718 F.3d 756 (8th Cir. 2013), supports its argument that it was not required to strictly comply with § 580.04(a)(5), § 580.041, subd. 1b, or § 580.041, subd. 2. In *Badrawi*, the bank violated § 580.032, subd. 3, which requires that "[a] person foreclosing a mortgage by advertisement shall record a notice of the pendency of the foreclosure with the county recorder or registrar of titles in the county in which the property is located before the first date of publication of the foreclosure notice . . . ." The bank recorded the notice of pendency on the day of, rather than "before," the publication of the foreclosure notice. 718 F.3d at 757. The homeowner sued to invalidate the foreclosure sale, the district court dismissed the lawsuit, and the Eighth Circuit affirmed.

The Eighth Circuit did *not* hold that strict compliance with § 580.032, subd. 3 was unnecessary; to the contrary, the Eighth Circuit "agree[d] that the Minnesota Supreme

Court has strictly construed state foreclosure statutes." 718 F.3d at 759. Instead, the Eighth Circuit held that, because the homeowner was "not among the class whose interests Minn. Stat. § 580.032, subd. 3 was enacted to protect," she essentially did not have standing to sue to enforce the statute. *Id.* at 758-60. Specifically, the Eighth Circuit held that § 580.032, subd. 3 explicitly protects "only those with 'a redeemable interest in real property' who 'request . . . notice of a mortgage foreclosure by advertisement . . . .'" *Id.* at 758 (quoting § 580.032, subd. 1). The Eighth Circuit found that this language was not intended to protect homeowners such as Badrawi.

*Badrawi* is easily distinguishable. The protections of the statutory provisions at issue in this case, unlike the protections of the statutory provision at issue in *Badrawi*, are not explicitly limited to "[a] person having a redeemable interest in real property . . . ." *See Otremba v. CitiMortgage, Inc.*, No. 13-CV-0871 (JRT/HB), 2014 WL 4639778, at *4 (D. Minn. Sept. 16, 2014) ("When the foreclosure statute at issue does not contain such language . . . , *Badrawi* need not apply . . . ."). To the contrary, the sole purpose of § 580.041 is to protect homeowners. The title of the notice that must be provided under § 580.041 is "Help For *Homeowners* in Foreclosure," and all of the contents of that notice are intended to help a homeowner (such as McGraw) who is facing foreclosure. The notice tells homeowners what to expect in foreclosure; it directs

homeowners to foreclosure-counseling resources; it warns homeowners about foreclosure scams; and it informs homeowners of their redemption rights.

Indeed, with its singular focus on protecting homeowners, § 580.041 resembles consumer-protection statutes. *See, e.g.*, Minn. Stat. ch. 324–341 (Trade Regulations, Consumer Protection). These statutes also tend to be strictly construed. For example, the Minnesota Supreme Court "has provided for a strict application of the [Minnesota Consumer Protection Act]'s provisions, explaining that the act reflects 'a clear legislative policy encouraging aggressive prosecution of statutory violations.'" *Holiday Recreational Indus., Inc. v. Manheim Servs. Corp.*, 599 N.W.2d 179, 182 (Minn. Ct. App. 1999) (quoting *State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 495 (Minn. 1996) (considering statutory standing under several Minnesota consumer-protection statutes)). Section 580.041 was enacted in 2004 against the backdrop of these consumer-protection laws.

Finally, Citi argues that the Curative Act, Minn. Stat. § 582.25, which "cures" certain defects after a period of time, confirms that a substantial-compliance standard applies to its violations of the foreclosure-by-advertisement statutes. The Curative Act will "ma[ke] valid and effective" foreclosure sales that suffer from certain defects (specified in the statute) if there is no objection to those defects within one year after the last day of the redemption period. *See* Minn. Stat. § 582.25; Minn. Stat. § 582.27. But if

-11-

an objection to a defect *is* made within the one-year period, the Curative Act will not "cure" that defect. Here, McGraw objected to Citi's violations within the one-year period, and thus the Curative Act does not cure anything.

For these reasons, the Court predicts that the Minnesota Supreme Court would hold that banks must strictly comply with the requirements of both § 580.04(a)(5) and § 580.041, subd. 1b. The Court also predicts that the Minnesota Supreme Court would hold that banks must strictly comply with § 580.041, subd. 2, but recognizes that, to strictly comply with § 580.041, subd. 2, a bank must merely provide a foreclosure-advice notice that "substantially" resembles the statutory exemplar.

### C. Foreclosure-Advice Notice

Citi did not strictly comply with § 580.041, subd. 1b. Again, that provision requires that the foreclosure-advice notice "must be in 14-point boldface type" and that the title of the notice "must be in 20-point boldface type." Citi concedes that the foreclosure-advice notice that it served on McGraw violated these requirements. True, this error is trivial, and true, this error did not harm McGraw in any way.[3] But that does not matter under the strict-compliance standard. The foreclosure sale must be invalidated.

---

[3]It is also true that there is no reason why Citi could not have complied with this requirement, which is crystal clear and easily met.

Citi also did not comply with § 580.041, subd. 2. Again, that provision requires that the foreclosure-advice notice "must appear substantially as follows . . . ." The exemplar that follows includes this language: "AS OF [insert date], this lender says that you owe $[insert dollar amount] to bring your mortgage up to date (or 'reinstate' your mortgage). You must pay this amount, plus interest and other costs, to keep your house from going through a sheriff's sale." Obviously, the purpose of this language is to inform the homeowner of how much she must pay to "bring [her] mortgage up to date" and "keep [her] house from going through a sheriff's sale." The notice provided to McGraw failed of this purpose. That notice was provided to McGraw on December 12, 2012, but rather than tell her what she owed as of December 12, 2012, the notice told her what she owed as of January 9, 2012—which was almost a year earlier. Because the notice failed to tell McGraw how much she had to pay *at the time she received the notice* "to keep [her] house from going through a sheriff's sale," the notice was not substantially in the form required by § 580.041, subd. 2.

In sum, in foreclosing on McGraw's home, Citi violated both subdivision 1b and subdivision 2 of § 580.041. Because these violations require the Court to invalidate the foreclosure sale, the Court need not decide whether Citi also violated § 580.04(a)(5)—and, if so, whether that violation provides an independent basis for invalidating the foreclosure sale. Moreover, because the Court has found that the

foreclosure sale is invalid, McGraw's quiet-title claim is now moot. *See Gleason v. Deutsche Bank Nat'l Trust Co.*, No. 13-CV-0704 (ADM/FLN), 2013 WL 3893311, at *5 (D. Minn. July 26, 2013).

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, the Court GRANTS IN PART AND DENIES IN PART plaintiff's motion for summary judgment [ECF No. 19] and GRANTS IN PART AND DENIES IN PART defendants' motion for summary judgment [ECF No. 14]. IT IS HEREBY ORDERED THAT:

1. Plaintiff's summary-judgment motion [ECF No. 19] is GRANTED as to Counts III and IV, DENIED as to Counts I and V, and DENIED WITHOUT PREJUDICE as to Counts II and VI.

2. Defendants' summary-judgment motion [ECF No. 14] is GRANTED as to Counts I and V, and those counts are DISMISSED WITH PREJUDICE AND ON THE MERITS. Defendants' motion is DENIED as to Counts II, III, IV, and VI.

3. Counts II and VI are DISMISSED WITHOUT PREJUDICE AS MOOT.

4. The Court DECLARES that the foreclosure sale of plaintiff's property is NULL AND VOID.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 23, 2015
          s/Patrick J. Schiltz
          Patrick J. Schiltz
          United States District Judge